**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDON TIMMONS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-02035** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CO ISSAC, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

On November 3, 2020, Plaintiff Brandon Timmons ("Timmons") initiated this case

through the filing of a complaint alleging violations of his civil rights by Defendants, various

individuals employed by the Pennsylvania Department of Corrections ("DOC").  (Doc. No. 1.)

The case is currently proceeding on Plaintiff's fourth amended complaint.  (Doc. No. 122.)

Presently before the Court are Defendants' motions to dismiss the fourth amended complaint.

(Doc. Nos. 125, 127, 130.)  For the following reasons, the Court finds that the claims raised in

the fourth amended complaint are misjoined in violation of Federal Rule of Civil Procedure 20.

To remedy the misjoinder in accordance with Federal Rule of Civil Procedure 21, Timmons's

retaliation claim arising from the filing of grievances and complaints will be dismissed without

prejudice; his claims against Defendant Tomcavage and his claims for retaliation, cruel and

unusual punishment, and intentional infliction of emotional distress arising from his criminal

conviction will be dismissed without further leave to amend for failure to state a claim upon

which relief may be granted; and the remaining claims will be severed into five separate lawsuits

for which Timmons will be required to either pay the requisite filing fee or move for leave to

proceed in forma pauperis.

## I.    BACKGROUND

Timmons initiated this case through the filing of a complaint pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  Following several rounds of amendment, the case is currently proceeding on Plaintiff's fourth amended complaint, filed on April 20, 2022.  (Doc. No. 122.)  Defendants have moved to dismiss the fourth amended complaint through three separate motions.  (Doc. Nos. 125, 127, 130.)  Briefing on the motions is complete and they are ripe for review.  (Doc. Nos. 126, 128, 140-42, 148.)  Subsequent to the filing of the motions to dismiss, the Court dismissed all claims against Defendant Stahler for lack of service of process pursuant to Federal Rule of Civil Procedure 4 and all claims against Defendant Hess because he is deceased and no motion to substitute a defendant in his place was filed in accordance with Federal Rule of Civil Procedure 25(a)(1).  (Doc. Nos. 155-56.)

According to the allegations in the fourth amended complaint, Timmons, who is serving a sentence for the homicide of Valerie Angeline ("the victim"), was incarcerated in the State Correctional Institution-Frackville ("SCI-Frackville") at the beginning of the time period relevant to this case in November 2019.  (Doc. 122 at 4.)  Defendant Tomcavage, who was friends with the victim and was employed by SCI-Frackville as a unit manager during the relevant time, allegedly instructed other employees of SCI-Frackville and the DOC to violate Timmons's constitutional rights for nearly two years as retribution for the homicide of her friend. (Id.)  Tomcavage allegedly persuaded other SCI-Frackville employees to join a Facebook group she started about the homicide titled "We Will Not Forget."  (Id.)

The fourth amended complaint alleges that on November 18, 2019, Defendant Isaac and other unnamed correctional officers pepper sprayed Timmons.  (Id.)  Isaac, who was allegedly related to the victim, purportedly told Timmons that he "was going to pay for what he did."  (Id.)

After he was pepper sprayed, Timmons told Defendant Edmonds and a John Doe correctional officer that he had not yet been decontaminated from the pepper spray.  (Id. at 5.)  The officers allegedly refused to have Timmons decontaminated or allow him to shower, which caused Timmons to experience continual physical pain from the pepper spray.  (Id.)  The officers also allegedly attempted to place Timmons in a cell that had feces on the walls and doors.  (Id.)  Timmons told the officers that he was suicidal and that he was going to harm himself.  (Id.)  Timmons then harmed himself by "ramming" his head into the door and window of his cell and performing "self strangulation."  (Id.)  He informed an unnamed correctional officer that he had done this to himself, and the officer allegedly stated, "I don't care kill yourself."  (Id.)  Defendant Edmonds and Warford allegedly denied Timmons necessary medical care following the pepper spraying and incidents of self-harm.  (Id.)

The fourth amended complaint alleges that from November 22, 2019 to November 29, 2019, Timmons was left in an "extremely cold cell" without a mattress for seven days and without a blanket for three days.  (Id. at 6.)  He continued to ask members of the prison's medical staff and Defendant Dempsey for a mattress and a blanket but they allegedly repeatedly denied his requests.  (Id.)

Sometime in December 2019, an unknown person allegedly planted a razor in Timmons's belongings, which led to disciplinary charges against him.  (Id.)  Timmons spent two weeks in the prison's Restricted Housing Unit ("RHU") as a result of the charge, but he subsequently got the charge dismissed.  (Id.)

In April 2020, Defendant Tomcavage called Timmons into her office and allegedly stated that she was "going to make [Timmons] pay for everything he did."  (Id.)  Tomcavage allegedly referred to the victim during this conversation.  (Id.)  Timmons said that he would report her

actions to prison officials, and Tomcavage allegedly threatened him with retaliation if he did so. (Id.)  During this time, Tomcavage allegedly continued to tell other prison staff members about the facts underlying Timmons's homicide conviction.  (Id.)  She also allegedly told other inmates that Timmons was a "rat," a "pedophile," and a "rapist."  (Id.)

On August 8, 2020, several phone calls that Timmons attempted to make were allegedly blocked by prison officials.  (Id. at 7.)  Timmons allegedly informed Defendant Wynder in September 2020 that he was in danger because of Defendant Tomcavage's actions.  (Id.) Timmons gave Wynder two grievances about his complaints against Tomcavage.  (Id.)  Wynder allegedly told Timmons that he would take care of the situation, but subsequently took no action. (Id.)

On September 20, 2020, Timmons was taken to an outside medical facility for treatment of a medical condition unrelated to the facts of this case.  (Id.)  As he was being transported to the medical facility, the correctional officers who were driving the vehicle made comments about his homicide case and told "some made up story about [Timmons] that was online."  (Id.)  After hearing these comments, Timmons allegedly refused to have his blood drawn at the medical facility.  (Id.)  In response, Defendant Burgess allegedly held Timmons down, punched him in the face, and then forced him to have his blood drawn.  (Id.)  Timmons received multiple injuries, including what Timmons believed to be a broken nose.  (Id. at 7-8.)

Timmons was temporarily transferred to the State Correctional Institution-Dallas ("SCI-Dallas") immediately after the alleged assault by Burgess.  (Id. at 8.)  Upon his arrival at SCI-Dallas, Defendant Lux, an RN in the prison, took pictures of his injuries, but allegedly declined to document several of the injuries.  (Id.)  Lux and other medical officials allegedly refused to provide medical care to Timmons and falsified records to say that he refused treatment.  (Id.)  He

was then seen by Defendant Prince, a doctor in the prison, who also allegedly refused to treat him.  (Id.)

Timmons was transferred back to SCI-Frackville on September 25, 2020.  (Id.)  Timmons allegedly sought to file an abuse allegation under the Prison Rape Elimination Act ("PREA") that day, but was told by Defendant Simpson that there was no longer a PREA hotline available for such allegations.  (Id.)  Simpson allegedly told Timmons that he would file the PREA complaint on his behalf, but never did so.  (Id.)

On October 1, 2020, Defendant Edmonds allegedly "slammed" Timmons's wrist into the slot on his cell door.  (Id. at 9.)  Timmons suffered unspecified physical injuries as a result.  (Id.)  Defendant Stahler[1] allegedly concealed the nature of Timmons's injuries by falsifying medical records.  (Id.)  Timmons was then placed in a "strip cage" and pepper sprayed by an unspecified officer.  (Id.)  Stahler allegedly refused to decontaminate Timmons following the pepper spraying.  (Id.)  Edmonds, Stahler, and Simpson allegedly refused to provide medical care arising from the pepper spraying for several days following the incident.  (Id.)

The fourth amended complaint alleges that an attorney named Colin Carriere ("Carriere"), acting on Timmons's behalf, attempted to set up several conferences with Defendant Brittain, the warden of SCI-Frackville, to discuss the potential danger to Timmons caused by being housed in the same facility as a friend of his victim and a relative of his victim.  (Id.)  Brittain allegedly denied all of Carriere's requests.  (Id.)  Timmons allegedly informed Brittain and other supervisory Defendants Wetzel and Kerestes of the actions by their subordinates that were allegedly placing him at risk of harm through the filing of several

---

[1] As noted above, Stahler has been dismissed for lack of service of process.  (Doc. No. 155.)

grievances and letters, but none of the supervisory Defendants took any action to protect Timmons.  (Id. at 10.)

On September 28, 2020, an unknown correctional officer allegedly brought Timmons a packet containing approximately forty pictures of babies.  (Id.)  The officer allegedly told Timmons that the packet was a gift from Defendant Tomcavage "for the child molester."  (Id.)

Beginning in September 2020, Timmons allegedly suffered a series of retaliatory actions as a result of filing grievances related to this case and filing the complaint that initiated this case. (Id.)  He was allegedly placed on a "modified food bag" from September 25, 2020 to October 8, 2020.  (Id.)  Defendants Walton, Storm, and Morris allegedly denied Timmons approximately 40 showers between September 28, 2020 and February 3, 2021.  (Id. at 11.)  From April 29, 2021 to May 14, 2021, Walton, Storm, and Morris allegedly intentionally made Timmons's showers either extremely cold or extremely hot.  (Id. at 13.)  On May 10, 2021 and May 11, 2021, Defendant Ebert allegedly did not bring Timmons juice or milk during meal times.  (Id.)  On May 15, 2021, unknown correctional officers allegedly planted drugs on mail that Timmons received from this Court.  (Id.)  On May 13, 2021, several legal papers that Timmons had in his cell were confiscated during a cell search along with x-ray results and a pen.  (Id.)  On June 5, 2021, Timmons had a phone call cut in half by Defendants Brennan and Whitney.  (Id.)  On July 20, 2021 and July 27, 2021, Timmons allegedly received bags of food items from the prison commissary that had allegedly been opened and contaminated with foreign liquids.  (Id. at 14.)

Based on the above, the fourth amended complaint asserts claims for excessive force, denial of medical care, deliberate indifference to a serious medical need, denial of showers, destruction of medical records, denial of furnishing, retaliation, violation of Timmons's right of access to the courts, supervisory liability, deliberate indifference, civil conspiracy, cruel and

unusual punishment, intentional infliction of emotional distress, medical malpractice, assault and battery, and "campaign harassment."  (Id. at 15-18.)  Timmons requests damages and injunctive relief.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must

take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not

entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual

allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation

marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223,

230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document

filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro

se complaints, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429

U.S. at 106).

    **B.**    **Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

### A.    Misjoinder

Although Defendants raise numerous arguments in support of their motions to dismiss, the Court will consider at the outset the arguments asserted by Defendant Dempsey and Commonwealth Defendants Wetzel, Brittain, Kerestes, Wynder, Simpson, Brennan, Walton, Edmonds, Isaac, Tomcavage, Burgess, Smith, Lux, Storm, Morris, Mateyak, Warford, Holly, Ebert, Gimble, and Mattern that Timmons's claims are misjoined in violation of Federal Rule of Civil Procedure 20.  (Doc. No. 128 at 4-5; Doc. No. 142 at 39-40.)  Under Rule 20, claims against multiple defendants may be joined in the same action only if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

9

See Fed. R. Civ. P. 20(a)(2).

Upon review of Plaintiff's fourth amended complaint, the Court agrees with Defendants that the complaint contains misjoined claims in violation of Rule 20.  The fourth amended complaint contains a series of unrelated grievances about Timmons's incarceration over a nearly two-year period tied together by nothing other than Timmons's conclusory assertions that all of the defendants were acting as part of a conspiracy at Defendant Tomcavage's direction.  The fourth amended complaint does not contain any factual allegations as to Defendant Tomcavage actually directing the other Defendants' actions; rather the alleged conspiracy appears to be based solely on Timmons's speculation that every adverse action taken against him in a two-year period must have been done at Tomcavage's direction.  Timmons's conclusory assertions of a conspiracy are not a sufficient basis to join unrelated claims in a single action.  See, e.g., Salley v. Sec'y Pa. Dep't of Corrs., 565 F. App'x 77, 80-82 (3d Cir. 2014) (unpublished); Easley v. Tritt, No. 1:17-cv-00930, 2018 WL 1906104, at *2 n.1 (M.D. Pa. Apr. 23, 2018).  Accordingly, the Court finds that the fourth amended complaint violates Rule 20 by joining unrelated claims in a single action.

Misjoinder of claims, however, is not grounds for dismissal of the entire action.  See Fed. R. Civ. 21; Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir. 1972).  Rather, a district court has two options when a plaintiff has misjoined claims: (1) "drop" the misjoined parties from the case on "just terms" or (2) sever the claims into separate lawsuits.  See Fed. R. Civ. P. 21; DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006).  When a party is dropped under Rule 21, he is dismissed from the case without prejudice.  See DirecTV, Inc., 467 F.3d at 845 (citing Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir. 1979)).  The statute of limitations for claims against that defendant is not tolled because the initial complaint

is treated "as if it never existed."  See id. (quoting Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005)).  When, on the other hand, the claims are severed, "the suit simply continues against the severed defendant in another guise."  See id. (citing White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n.6 (3d Cir. 1999)).

District courts have discretion to choose whether misjoined claims should be dismissed or severed.  See id.  Courts may only dismiss misjoined claims, however, if doing so would be just, "that is, if doing so 'will not prejudice any substantial right'" of the plaintiff.  See id. (internal emphasis omitted) (quoting Sabolsky, 457 F.2d at 1249).  "Hence, a court must analyze the consequences of a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance."  Id.

Having reviewed the fourth amended complaint in light of Rule 20's joinder requirement, the Court has determined that it should be divided into nine separate and distinct actions, which will receive different treatment as specified below.

The first action ("Action 1") arises from Timmons's civil conspiracy claim, which is asserted in Count 17 of the fourth amended complaint against all Defendants.  (Doc. No. 122 at 17.)  This action will be dismissed without further leave to amend because, as noted above, Timmons's allegation of a conspiracy is based on nothing more than his own conclusory assertions that all Defendants were acting at Defendant Tomcavage's direction.

The second action ("Action 2") arises from the allegedly adverse actions taken by Defendant Tomcavage that are asserted in Counts 13, 18, and 19 of the fourth amended complaint.  (Id. at 17-18.)  Because Tomcavage is the primary defendant named with respect to Timmons's factual allegations, this action will be allowed to proceed under the current docket

number.  As discussed below, however, the Court will dismiss claims in this action without further leave to amend for failure to state a claim upon which relief may be granted.

The third, fourth, fifth, sixth, and seventh actions ("Actions 3-7") will be severed into separate individual cases.  Action 3 arises from Timmons's excessive force and failure to treat claims against Edmonds, Simpson, Warford, and the John Doe Defendant, the other Eighth Amendment claims against these defendants, and Simpson's purported failure to file a PREA complaint on Timmons's behalf.  These claims are raised in counts 1, 2, 4, 5, 8, and 11 of the fourth amended complaint.  (Id. at 15-16.)  Action 4 arises from Burgess's alleged use of excessive force and the medical Defendants' alleged failure to treat Timmons's resulting injuries.  These claims are raised in Counts 3, 6, 7, 20, and 21 of the fourth amended complaint against Defendants Burgess, Prince, and Lux.  (Id. at 15-16, 18.)  Action 5 arises from Timmons's alleged placement in a cold cell without a mattress or a blanket by Defendant Dempsey.  This claim is raised in Count 12 of the fourth amended complaint.  (Id. at 16.)  Action 6 arises from Defendant Brittain's purported denial of conferences with Attorney Carriere and the alleged failure to protect Timmons by Brittain and the other supervisory Defendants.  These claims are raised in Counts 15 and 16 of the fourth amended complaint against Defendants Brittain, Wetzel, Wynder, Harold, and Kerestes.  (Id. at 17.)  Action 7 arises from Wynder's purported failure to file a grievance on Timmons's behalf.  This claim is raised in Count 16 of the fourth amended complaint.  (Id.)

Actions 3-7 will be severed into separate lawsuits because all of the facts pertaining to the actions occurred outside of the two-year limitations period applicable to civil rights claims brought pursuant to Section 1983.  See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).  Accordingly, severance, rather than dismissal, is necessary to avoid prejudice to Timmons's

12

substantial rights.  See DirecTV, Inc., 467 F.3d at 845.  Timmons will be required to separately

pay the filing fee or move for leave to proceed in forma pauperis as to the each of these

individual actions.  Timmons will additionally be required to file an amended complaint with

respect to each separate action.  Failure to pay the filing fee or move for leave to proceed in

forma pauperis will result in dismissal of the action without prejudice.  Failure to file an

amended complaint will result in dismissal of the action with prejudice for failure to prosecute.

   The eighth action ("Action 8") arises from Timmons's allegation of retaliation and

related claims for intentional infliction of emotional distress and "campaign harassment" arising

from his underlying criminal conviction.  These claims are raised in Counts 13, 19, and 22 of the

fourth amended complaint against Defendants Walton, Morris, Storm, Brennan, Whitney,

Tomcavage, Edmonds, Burgess, Simpson, Ebert, Gimble, Mattern, Warford, Isaac, Dempsey,

Smith, Holly, Mateyak, Prince, Lux, Hess, Whitney, and Brennan.  (Id. at 17-18.)  Action 8 will

be dismissed without further leave to amend, as discussed below.

   The ninth and final action ("Action 9") arises from the alleged retaliation that occurred as

a result of Timmons's filing of grievances and complaints related to the facts of this case as well

as Timmons's associated Eighth Amendment claims.  These claims are raised in Counts 9, 10,

13, and 14 of the fourth amended complaint.  According to the allegations in the fourth amended

complaint, this pattern of retaliation began in September 2020 and continued through July 27,

2021.  (Doc. No. 122 at 10-14.)  Thus, it appears from the fourth amended complaint that

Timmons could assert these claims on or before July 27, 2023, pursuant to the continuing

violations doctrine.  See, e.g., Montanez v. Sec'y Pa. Dep't of Corrs., (3d Cir. 2014) (noting that

"when a defendant's conduct is part of a continuing practice, an action is timely so long as the

last act evidencing the continuing practice falls within the limitations period" (quoting Cowell v.

13

Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001))).  Accordingly, the Court will dismiss Action 9 without prejudice rather than severing it because dismissal would not prejudice Timmons's substantial rights.  See DirecTV, Inc., 467 F.3d at 845.

In sum, the Court finds that Timmons's fourth amended complaint contains misjoined claims in violation of Federal Rule of Civil Procedure 20.  To remedy this misjoinder, Actions 1, 2, and 8 will be dismissed without further leave to amend for failure to state a claim upon which relief may be granted, Actions 3-7 will be severed into separate lawsuits, and Action 9 will be dismissed without prejudice.

### B.    Timmons's Remaining Claims

Having resolved the joinder issue, the Court turns to the remaining claims raised in Actions 2 and 8.  These actions, which assert claims for retaliation, cruel and unusual punishment, intentional infliction of emotional distress, and "campaign harassment," fail to state a claim upon which relief may be granted.  First, to state a retaliation claim upon which relief may be granted, a plaintiff must allege that (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against the plaintiff that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the plaintiff's protected conduct and the defendant's retaliatory action.  See Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019).  Timmons's retaliation claim fails because he does not allege that he engaged in constitutionally protected conduct.  He asserts that Defendants retaliated against him because he killed Tomcavage's friend.  Committing homicide is not protected by the First Amendment.

Timmons's cruel and unusual punishment claim likewise fails to state a claim upon which relief may be granted because the conduct allegedly committed by Tomcavage—starting a

14

Facebook group and getting people to join it; stating that she was "going to make [Timmons] pay for everything he did"; stating that he was "going to get it" if he reported her alleged misconduct; calling him a rat, a pedophile, and a rapist; and giving him pictures as "a gift . . . for the child molester" (Doc. No. 122 at 4, 6, 10)—does not violate the Eighth Amendment.  Harassing and threatening language by itself does not violate the Eighth Amendment, see, e.g., Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (unpublished); Rieco v. Moran, 633 F. App'x 76, 79 (3d Cir. 2015) (unpublished), and Timmons does not raise a deliberate indifference claim against Tomcavage or otherwise allege that her statements calling him a rat, a pedophile, a rapist, or a child molester placed him in danger of assault by other inmates or staff members.  Thus, the only basis for the claim is that the language was offensive or harassing, which is not sufficient to allege an Eighth Amendment violation.  Furthermore, starting a Facebook group simply does not amount to a violation of the Eighth Amendment.  Timmons's "campaign harassment" claim fails for similar reasons, as harassment by itself does not violate the Eighth Amendment.  See id.

Finally, to state an intentional infliction of emotional distress claim upon which relief may be granted, a plaintiff must allege that (1) defendants engaged in extreme and outrageous conduct; (2) the conduct was intentional or reckless; (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe.  See Snider v. Pa. DOC, 505 F. Supp. 3d 360, 445 (M.D. Pa. 2020); Jordan v. PSU, 276 A.3d 751, 775 (Pa. Super. 2022). Defendants' conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" to support an intentional infliction of emotional distress claim.  See Jordan, 276 A.3d at 775 (quoting Rhinehimer v. Luzerne Cnty. Cmty. Coll., 539 A.2d 1298, 1305 (Pa. 1988)).  The conduct allegedly committed by Defendants in this case is not sufficiently

extreme or outrageous to support an intentional infliction of emotional distress claim.  Timmons additionally fails to allege any emotional distress that he suffered as a result of Defendants' conduct.  He accordingly fails to state an intentional infliction of emotional distress claim upon which relief may be granted.

      **C.**     **Leave to Amend**

      Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.

      The Court finds that further amendment would be futile with respect to Timmons's retaliation claim arising from his criminal conviction and his related claims for cruel and unusual punishment and campaign harassment because such claims fail as a matter of law.  The Court additionally finds that amendment would be futile with respect to the intentional infliction of emotional distress claim because none of the conduct allegedly committed by Defendants is sufficiently extreme or outrageous to support such a claim.  Moreover, Timmons has not requested leave to amend the claim, and the Court is not obligated to sua sponte grant leave to amend for a non-civil rights claim.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,

482 F.3d 247, 251-53 (3d Cir. 2007).  Accordingly, the claims raised in Actions 2 and 8 will be dismissed without further leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss to the extent that they seek severance or dismissal for Timmons's violation of Federal Rule of Civil Procedure 20.  Actions 3-7 will be severed from this lawsuit and Action 9 will be dismissed without prejudice as specified in Section III.A supra. The motions to dismiss will also be granted to the extent that they seek dismissal of Timmons's civil conspiracy claim, his claims against Tomcavage, and his retaliation, cruel and unusual punishment, intentional infliction of emotional distress, and campaign harassment claims arising from his underlying criminal conviction. Those claims will be dismissed without further leave to amend.  The motions to dismiss will be denied as moot in all other respects.  The instant case will be closed and Timmons will be required to file an amended complaint and pay the filing fee or move for leave to proceed in forma pauperis as to all severed claims.  An appropriate Order follows.